UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAMIEN C. HICKS-BAILEY,

                                        Petitioner,

         v.                                                        **DECISION AND ORDER**
                                                                   19-CV-1177-A
                                                                   16-CR-40-A

UNITED STATES OF AMERICA,

                                        Respondent.


         Before this Court are four motions filed by Petitioner Damien C. Hicks-Bailey.

*See*, Dkt. #73, #81, #83, and #85.[1] For the reasons which follow, Hicks-Bailey's

motions are denied.

## I.     Background

         On April 12, 2016, a federal grand jury returned a two-count indictment

charging Hicks-Bailey with: unlawful distribution of heroin, in violation of Title 21,

United States Code, Section 841(a)(1); and use of a communication facility to facilitate

a controlled substance offense, in violation of Title 21, United States Code, Section

843(b).

         On May 3, 2017, Hicks-Bailey appeared before this Court with his attorney and

entered into a written plea agreement with the government, pleading guilty to unlawful

---

[1] References herein, unless otherwise indicated, are to documents filed on this Court's
Docket in case 16-CR-40-A.  Petitioner's primary motion is a *pro se* Motion to Vacate,
Set Aside, or Correct the Sentence Under 28 U.S.C. § 2255 ("§ 2255 Motion").  *See*,
Dkt. #73.   The three other motions, each related to the § 2255 Motion, are a motion to
appoint counsel (Dkt. #81) and two motions for an evidentiary hearing (Dkt. #83 and
#85).

distribution of heroin, in violation of Title 21, United States Code, Section 841(a)(1). *See*, Dkt. #36. The plea agreement anticipated a total offense level of 10 and a criminal history category of IV, resulting in a guideline range of 15-21 months. However, as part of the plea agreement, the government reserved the right to argue for an upward adjustment under the Sentencing Guidelines, pursuant to §5K2.1 (death policy statement) and/or §5K2.2 (physical injury policy statement). The Court made specific inquiries of the defendant at the time of his plea to ensure that he understood that the government would be seeking an adjustment that could be as high as the statutory maximum of twenty years., a prisoner in federal custody. *See*, Dkt. #77.

Following the guilty plea, on September 13, 2017, a *Fatico* hearing was held. *See*, Dkt. #46.   On November 2, 2017, Hicks-Bailey was sentenced. This Court determined that an upward departure was warranted on the ground that Hicks-Bailey's offense conduct resulted in death. *See*, Dkt. #64, pp. 4-12.  The Court imposed a term of imprisonment of 96 months and the statutory minimum term of supervised release of 3 years.  *See*, Dkt. #57, ¶63; Dkt. #59.

Hicks-Bailey appealed, and on October 29, 2018, the Second Circuit issued a summary order affirming Hicks-Bailey conviction and sentence.  *See*, Dkt. #71.

Thereafter, on May 28, 2019, Hick-Bailey filed the pending § 2255 Motion.  *See*, Dkt. #73.

## II.     Analysis

### a.  Involuntary and Unknowing Plea

Hicks-Bailey first claims in conclusory fashion that his guilty plea, to a one-count information charging him with possessing with intent to distribute and distributing heroin, in violation of Title 21, United States Code, Section 841, was involuntary.  In that regard, he asserts: "Counsel ill-advised Petitioner to accept the plea agreement. Had petitioner known he could have asked the court for funds to hire experts such as a forensic pathologist, he would not have accepted the plea offer. Further, had Petitioner been informed of the amount of time he was facing on the upward adjustment; he would not have pled guilty. Counsel advised Petitioner that the government did not have enough evidence to get the upward adjustment applied. Had petitioner not been ill-advised he would not have pleaded guilty." Dkt. # 73, p. 4.

Hicks-Bailey's arguments run counter to his sworn testimony at the change of plea hearing. At that hearing, the following exchange took place:

> THE COURT: It's also very important, sir, that you understand what your rights are. If at any time during the course of these proceeding, there's something you do not understand, you want to ask me a question, you want to consult with Mr. Cantwell, you're free to do so. You're encouraged to do so. It's not important that we get this over with as quickly as possible. What's important is that I'm satisfied that you fully understand what your rights are. Do you understand that, sir?
>
> PETITIONER: Yes, sir.
>
> THE COURT: Now, sir, you represented to me that you're here to waive certain rights and to plead guilty to Count 1 under the terms and conditions of the plea agreement. Do you understand this charge?

PETITIONER: Yes, sir.

THE COURT: Mr. Cantwell, you've gone over Count 1 with your client. It's pretty straightforward. Are you satisfied he understands it?

MR. CANTWELL: Yes, Your Honor.

THE COURT: Any reason for me to go through any further explanation?

MR. CANTWELL: No, Your Honor.

THE COURT: And you reviewed with him the terms and conditions of the plea agreement?

MR. CANTWELL: I have.

THE COURT: And his rights under Rule 11, right to a trial, etcetera?

MR. CANTWELL: I have, Your Honor.

THE COURT: And sir, you discussed this whole matter with Mr. Cantwell. He's explained to you what your legal rights are, what your legal options are. You probably didn't like to hear what he had to tell you, but he's not there to make you feel good. He's there to be your legal counsel. And apparently, based on those discussions, you're here today to waive certain rights and to plead guilty to this charge under the terms and conditions of the plea agreement. Are you fully satisfied with the advice and counsel you received from Mr. Cantwell?

PETITIONER: Yes, sir.

THE COURT: No complaints?

PETITIONER: (The defendant shook his head.)

Dkt. #77, pp. 3-5.  The colloquy continued:

AUSA: It's the position of the government that the defendant is pleading as charged to the sole count of the indictment, taking responsibility for distributing heroin. However, it's also the government's contention that at sentencing, the Court should consider that the heroin that was distributed caused or assisting in causing the death of the victim. And while that's not contemplated in the guidelines, there is a policy section 5K2.1 and 5K2.2 that allows the Court to consider it and to determine if the Court thinks it's appropriate and it applies to an upward modification to appropriately find a sentence that fits with the particular crime. The defendant will - -

THE COURT: What's your position on this?

AUSA: My position, Judge, is that the defendant distributed a dose of heroin and the victim thereafter injected himself and he died.

THE COURT: Is there a medical report on this?

AUSA: There is, Your Honor.

THE COURT: What does it say?

AUSA: It says that the victim died from a combination or polydrug use. It was a combination of five different drugs, including butyrl fentanyl and some other drugs that are more therapeutic in nature, including Zoloft and some antidepressant drugs, but it was the combination of those drugs that caused the victim's death. The government's contention will be at sentencing, Your Honor, that the defendant's conduct here played a role in the demise of the victim and therefore, the guidelines don't adequately account for that, being that his sentencing range would be between 15 and 21 months. So, we are going to file with the Court a lengthy memorandum and urge the Court to make an upward modification at the time of sentencing. It's my understanding that the defendant will oppose that and will ask the Court to sentence him in accordance with the guideline. But, ultimately, the parties agree that that's the only issue of dispute and that's why this doesn't need to be a trial. It's a sentencing issue that needs to be decided by the Court.

THE COURT: So, we're talking about a hearing?

AUSA: Yes, Your Honor.

THE COURT: Talking about taking of evidence?

AUSA: I believe it will require some fact-finding by the Court that would require an evidentiary hearing.

THE COURT: And what - - the sentence could be up to 20 years if I were to make this finding, I assume?

MR. FELICETTA: The Court is - - yes, Your Honor. The Court is free to make any sentencing finding it would like up to maximum penalty as set forth in paragraph 1.

THE COURT: Mr. Cantwell, you explained all that to your client?

MR. CANTWELL: I did, Your Honor.

THE COURT: He understands that?

MR. CANTWELL: He does.

THE COURT: Do you understand that, sir?

PETITIONER: Yes, sir.

*Id.*, pp. 14-16.  The prosecutor and Court then further discussed the

government's position and, again, the importance of Paragraph 1 in the plea.

*Id.*, at 17.

MR. CANTWELL: The defendant understands that the government has reserved the right to petition the Court for a sentence outside the guidelines.

THE COURT: Okay. Do you understand that, sir?

PETITIONER: Yes, sir.

THE COURT: I could put you in jail for 20 years. Do you understand that?

PETITIONER: Yes, sir. *Id.*, at 17-18.

THE COURT: Now, sir, we've gone over the agreement in court. You indicated you understand it. You signed it indicating you understand it. Your attorney says that he's gone over it with you. He's  satisfied you understand it. Any questions, sir?

PETITIONER: No, sir.

THE COURT: Are these all the terms and conditions of the plea agreement which we just read here in court?

PETITIONER: Yes, sir.

THE COURT: No one has made any other promises to you, have they?

PETITIONER: (The defendant shook his head.) *Id.*, at 21.

THE COURT: Now, sir, is anyone forcing you to plead guilty?

PETITIONER: No, sir.

THE COURT: Anyone threaten you in any way?

PETTIONER: No, sir.

THE COURT: Your willingness to plead guilty, you discussed it with your attorney. He discussed it with the government's attorney. Based

6

on those discussions, this plea agreement was prepared and that's basically how this all came about, true?

PETITIONER: Yes, sir.

THE COURT: Now, do you understand, the offense which you are pleading guilty to is a serious offense? If it's accepted by the Court, you'll be found guilty and there will be no appeal, except as set forth in the plea agreement. If I were to go higher - - and that could be a serious factor here - - you can appeal the decision of the Court on the grounds that whatever the sentence I would give above the guideline range - - and your position is that it's unreasonable. That would be the sentencing standard. I think that would be the appeal standard. Is that pretty accurate? I think that's what it would be. Do you understand all that, sir?

PETITIONER: I understand completely.  *Id.*, at 23-24.

…

THE COURT: You're doing this voluntarily, of your own free will, no one is forcing you to do this, you understand all the possible consequences?

PETITIONER: Absolutely.  *Id*.,  at 27.


Statements at a plea allocution "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  "[U]nsupported allegations which merely contradict [a defendant's] earlier statements made under oath at his plea allocution" do not provide sufficient grounds for withdrawal of a guilty plea as involuntary. *United States v. Gonzalez*, 970 F.2d 1095, 1100–01 (2d Cir.1992); *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [a] guilty plea.").

Here, Hicks-Bailey's claims that he did not know his rights nor the amount of time he could receive at sentencing are in direct contradiction to his statements at the change of plea proceeding. Given Hicks-Bailey's statements under oath at that change of plea proceeding, and the presumption that those statements were true, his current claims are simply not credible, and his request for habeas corpus relief based upon an unknowing and involuntary plea is **DENIED**.

### b.  Ineffective Assistance of Counsel

Hicks-Bailey next argues that his attorney was ineffective in failing "sufficiently [to] oppose to the Government's argument in applying 21 U.S.C . 841(b)(I)(c) upward adjustment sentencing enhancement under §5K2.1 (Death Policy Statement) and 5K2.2(Serious bodily injury statement)…". Dkt. #73, p. 5.

This argument, which exclusively challenges the length of the term of imprisonment imposed by the Court has been rendered moot by Hicks-Bailey's release from custody. Since the Court imposed the statutory minimum term of supervised release of 3 years, even if his claim could be interpreted as challenging his term of supervised release, such claim is now moot.  *See*, *Gomez-Vargas v. United States*, No. 07 CIV. 1864 HB, 2009 WL 1024241, at *3 (S.D.N.Y. Apr. 15, 2009)("even if the instant petition were to be interpreted to challenge the length of Petitioner's supervised release in addition to imprisonment, that challenge likewise is moot. Petitioner was sentenced to the statutory minimum of two years of supervised release based on his conviction…; thus, even if the Court were to re-sentence Petitioner, it would be unable to impose a lesser term of supervised release than that

already imposed); *see also, United States v. Williams*, 475 F.3d 468, 479 (2d Cir. 2007) (finding that petitioner's appeal was rendered moot upon his release because even if the case were remanded, there was no possibility that the district court could impose a reduced term of supervised release, as he had initially been sentenced to the statutory minimum supervised release).

## III.   Conclusion

For the reasons set forth above, Hicks-Bailey's motion to vacate, set aside, or correct his sentence (Dkt. #73) is **DENIED**.   Further, pursuant to 28 U.S.C. § 2253(c)(1) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability because Hicks-Bailey has not made a substantial showing of the denial of a constitutional right. Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied. Hicks-Bailey is advised that "Federal Rule of Appellate Procedure 4(a) governs the time to appeal," and "[a] timely notice of appeal must be filed even" though the Court declined to issue a certificate of appealability. Rule 11(b) of the Rules Governing Section 2255 Proceedings.   In view of this Court's denial of the § 2255 motion (Dkt. #73), Hicks-Bailey's remaining related motions—including his motions to appoint counsel (Dkt. #81) and for an evidentiary hearing (Dkt. #83; Dkt. #85) are further **DENIED** as moot.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
_____
HONORABLE RICHARD J.  ARCARA
SENIOR U.S. DISTRICT JUDGE

Dated:  August 27, 2024
         Buffalo, New York.